# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  2:17-CV-14369-ROSENBERG/MAYNARD

KIMBERLY ANDERSON, as
Personal Representative of  the
ESTATE OF JAMES ANDERSON,, JR.
and on Behalf of the Survivors,
KIMBERLY ANDERSON,
JAKIMIA ANDERSON, JASHA
ANDERSON, JASHONNA
ANDERSON, WILLIAM GASKIN,
and CONTRAILOUS ANDERSON,

       Plaintiff,

v.

KEN MASCARA, as Sheriff of St. Lucie
County, Florida, JOSEPH BRENNAN,
CORIZON HEALTH, INC., a Foreign
Profit Corporation and CHRISTINE
FAMILIA, M.D.,

       Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS IN LIMINE

This matter is before the Court on Defendants Ken Mascara ("Sheriff Mascara") and

Joseph Brennan's ("Deputy Brennan") motion to exclude opinions of Richard Masten [DE 94],

Sheriff Mascara and Deputy Brennan's motion for summary judgment [DE 125], Defendants

Corizon Health, Inc. ("Corizon") and Christine Familia, M.D.'s ("Dr. Familia") motion in limine

[DE 127], Corizon and Dr. Familia's motion for summary judgment [DE 130], Plaintiff's motion

for partial summary judgment [DE 131], and Plaintiff's motion in limine [DE 133]. The Court has reviewed the documents in the case file and is fully advised in the premises.

For the reasons set forth below, Sheriff Mascara and Deputy Brennan's motion for summary judgment [DE 125] is granted in part and denied in part. Corizon and Dr. Familia's motion for summary judgment [DE 130] is denied. Plaintiff's motion for partial summary judgment [DE 131] is denied. Sheriff Mascara and Deputy Brennan's motion to exclude opinions of Richard Masten [DE 94] is denied. Corizon and Dr. Familia's motion in limine [DE 127] is denied. Plaintiff's motion in limine [DE 133] is granted in part and denied in part.

## I. UNDISPUTED FACTS

Deputy Brennan, an employee of the St. Lucie County Sheriff's Office ("Sheriff's Office"), was on patrol in Fort Pierce on April 24, 2013, when he saw James Anderson, Jr.'s ("Anderson") car and observed that Anderson's front-seat passenger was not wearing a seatbelt. DE 128 at 2; DE 143 at 2. Deputy Brennan pulled behind Anderson's car and turned on his patrol car's emergency lights. DE 128 at 2-3; DE 143 at 2. Anderson walked and then began to run away from his car. DE 128 at 3; DE 143 at 3. Deputy Brennan chased Anderson and arrested him after a struggle that included Deputy Brennan's use of a technique known as a neck restraint. DE 128 at 3; DE 132 at 3-4; DE 137 at 3; DE 143 at 3. Anderson then was booked into the St. Lucie County Jail ("jail"). DE 132 at 7; DE 137 at 5.

According to jail medical records, Anderson had an "unwitnessed seizure" at 9:18 a.m. the following day. DE 129 at 2; DE 132 at 7; DE 137 at 5; DE 147 at 3. He was taken to the jail's medical unit, where he remained until sometime after 12:45 p.m. DE 129 at 2-3; DE 132 at 7-8.

Thereafter, he was transported to Lawnwood Regional Medical Center ("hospital"), where he later was pronounced dead as the result of a stroke.  DE 129 at 3; DE 132 at 8-9; DE 137 at 7.

## II.     PROCEDURAL HISTORY

Plaintiff filed a Fourth Amended Complaint [DE 80] under the Civil Rights Act, 42 U.S.C. § 1983, also alleging common law tort claims of battery, negligence, and medical negligence, for damages resulting from the use of force against Anderson in the course of his arrest and his subsequent death.  Count I is a state law battery claim against Deputy Brennan, and Count II is a state law claim of vicarious liability for battery against Sheriff Mascara.  Counts III and IV are § 1983 claims against Deputy Brennan and Sheriff Mascara.  Counts V and VI are state law medical-negligence claims against Corizon employee Dr. Familia and against Corizon, which had contracted to provide medical care to detainees at the jail.  Count VII is a state law negligence claim against Sheriff Mascara.

Deputy Brennan seeks summary judgment on the § 1983 false-arrest claim in Count III, and Sheriff Mascara seeks summary judgment on the *Monell* claim in Count IV.  Dr. Familia and Corizon seek summary judgment on Counts V and VI.  Plaintiff seeks partial summary judgment (1) against Deputy Brennan on the § 1983 excessive-force claim in Count III, (2) against Sheriff Mascara on his affirmative defense that the wrongful acts of others over whom he had no control caused Anderson's injuries, (3) for a finding that Anderson's need for medical care was serious, and (4) against Dr. Familia and Corizon on their affirmative defense that subsequent treating physicians were negligent and proximate intervening causal factors in Anderson's death.

Deputy Brennan and Sheriff Mascara move to exclude opinions of Plaintiff's expert Richard Masten regarding the lawfulness of the stop and detention of Anderson and the use of

force. Dr. Familia and Corizon's motion in limine seeks the exclusion of opinion testimony of five of Plaintiff's medical experts. Plaintiff's motion in limine seeks the exclusion of evidence of Anderson's prior criminal history and of opinion testimony of Dr. Familia and Corizon's experts Dr. Jonathon Arden and Dr. Edward Feldman.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).

"A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact court return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). When deciding a summary judgment motion, a court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). The court does not weigh conflicting evidence or make credibility determinations. *Id.*

### IV.    ANALYSIS

**A.    Deputy Brennan and Sheriff Mascara's Summary Judgment Motion**

**i.    False-arrest claim**

Plaintiff alleges in Count III of the Fourth Amended Complaint that Deputy Brennan initiated a traffic stop of Anderson's car, purportedly because Anderson's front-seat passenger was

not wearing a seatbelt. DE 80 at 11. Plaintiff alleges that Anderson stopped his car, providing Deputy Brennan full access to the passenger, and left the scene of the stop on foot. *Id.* at 12. Alternatively, Plaintiff alleges that Anderson had parked and exited his car, making him a pedestrian, before Deputy Brennan approached or made any contact or commands. *Id.* Plaintiff alleges that Deputy Brennan chased Anderson and falsely arrested him, using excessive force during the course of the arrest. *Id.* at 12-14.

Deputy Brennan seeks summary judgment on the false-arrest claim. Deputy Brennan argues that he had probable cause to conduct a traffic stop due to the front-seat passenger's lack of a seatbelt. DE 125 at 3-4. Deputy Brennan further argues that he had probable cause to arrest Anderson for obstruction because Anderson fled during the traffic stop, despite being ordered to remain in his car. *Id.* at 4. The existence of probable cause at the time of arrest is an absolute bar to § 1983 false-arrest claim. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Plaintiff responds that Deputy Brennan could not lawfully order Anderson to remain at the scene because Anderson was a pedestrian when Deputy Brennan pulled behind Anderson's car and turned on the patrol car's lights, and Deputy Brennan had no reasonable suspicion that Anderson had committed a crime. DE 142 at 2-4. Alternatively, Plaintiff responds that Deputy Brennan could not lawfully order Anderson to remain at the scene of the traffic stop when only the passenger had committed wrongdoing by failing to wear a seatbelt. *Id.* at 4-6.

Although Deputy Brennan raised an affirmative defense of qualified immunity in his Answer, he did not move for summary judgment based on qualified immunity. *See* DE 83 at 6; DE 125 at 1-4. He argued for the first time in his reply that he is entitled to summary judgment based on qualified immunity. *See* DE 152 at 1-7. He may not raise arguments for the first time in

a reply. *See Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1322 n.3 (S.D. Fla. 2015) (stating that arguments raised for the first time in a reply brief are not properly before a reviewing court). This Court construes his summary judgment motion as seeking relief based on the narrow issue of the existence of probable cause for Anderson's arrest.

An officer may conduct a traffic stop if he has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also* Fla. Stat. § 316.614(5) (requiring an adult, front-seat passenger of a moving motor vehicle to be restrained by a seatbelt). A lawful traffic stop permits a brief seizure of all of the car's occupants. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007). "[L]aw enforcement officers may detain a person briefly for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000).

The parties dispute whether Anderson had exited his car before Deputy Brennan pulled behind the car and turned on the patrol car's lights. *See* DE 128 at 2-3; DE 143 at 2. Anderson's passenger testified that they had exited the car before Deputy Brennan pulled behind the car and turned on the lights. DE 128-3 at 8-9, 25-26. The passenger did not indicate their distance from Anderson's car before Deputy Brennan initiated a traffic stop. Factual questions remain as to whether Anderson had exited his car before Deputy Brennan turned on the patrol car's lights, how long Anderson may have been away from his car before Deputy Brennan turned on the lights, and how far Anderson was from his car before Deputy Brennan turned on the lights. These factual issues are material because they impact whether Anderson was an occupant of the car who was subject to seizure at the time of the traffic stop. Thus, the Court cannot conclude as a matter of law

that Deputy Brennan lawfully could require Anderson to remain at the scene, and subsequently arrest him for obstruction, when the only wrongdoing that Deputy Brennan had witnessed was the passenger's failure to wear a seatbelt. *See* Fla. Stat. § 843.02 (stating that it is a misdemeanor to resist, obstruct, or oppose an officer in the lawful execution of a legal duty). Deputy Brennan's motion for summary judgment on the false-arrest claim is denied.

### ii. *Monell* **claim**

Plaintiff alleges in Count IV of the Fourth Amended Complaint that Sheriff Mascara is liable for the unlawful traffic stop because the Sheriff's Office had a custom or policy of stopping a disproportionate number of black individuals for purported seatbelt violations. DE 80 at 18-23. Plaintiff further alleges that Sheriff Mascara is liable for Deputy Brennan's use of excessive force during the course of Anderson's arrest because the Sheriff's Office had a custom or policy of encouraging, accepting, or ratifying uses of excessive force. *Id.* at 23-24.

Sheriff Mascara seeks summary judgment on these *Monell* claims. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality is not liable under § 1983 for an injury inflicted solely by an employee or agent, but may be liable when the execution of the municipality's custom or policy inflicted the injury). Sheriff Mascara argues that there is no evidence that the Sheriff's Office had a custom or policy of authorizing either unlawful stops or uses of excessive force. DE at 125 at 6, 9. Plaintiff responds that evidence of perfunctory and incomplete investigations into use-of-force reports and of exonerations of deputies following such investigations creates a genuine issue as to whether there was a custom or policy of accepting uses of excessive force. DE at 142 at 8-18. Plaintiff does not respond to Sheriff Mascara's argument

that there is no evidence of a custom or policy of authorizing unlawful stops, and Plaintiff does not dispute that Anderson's passenger was not wearing a seatbelt. *See* DE 128 at 2; DE 143 at 2.

For liability purposes in a § 1983 action, a lawsuit against a public official in his official capacity is considered a suit against the municipality that he represents. *Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015). To impose liability on the municipality, the plaintiff must show that his constitutional right was violated, that the municipality had a custom or policy that constituted deliberate indifference to the constitutional right, and that the custom or policy caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). It generally is necessary to show a persistent and widespread practice to demonstrate a custom or policy. *Id.* at 1290 (stating that a custom is "a practice that is so settled and permanent that it takes on the force of the law" (quotation marks omitted)). Random acts and isolated incidents normally are insufficient to establish a custom or policy. *Denno v. Sch. Bd. of Volusia Cty.*, 218 F.3d 1267, 1277 (11th Cir. 2000). A municipality's failure to correct the constitutionally offensive actions of its employees may rise to the level of a custom or policy if the municipality tacitly authorized the actions or displayed deliberate indifference toward the misconduct. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).

Plaintiff contends that records showing that the Sheriff's Office had at least 560 use-of-force incident reports between June 2008 and June 2013 and that the deputy or deputies involved were exonerated in each instance creates a genuine issue as to whether the Sheriff's Office has a custom or policy of accepting uses of excessive force. *See* DE 143-1. These records, however, show that the Sheriff's Office's Internal Affairs Unit investigated the incident reports and exonerated the deputies after each investigation. The number of incident reports does not

establish that there was misconduct that went uncorrected. *See Brooks*, 813 F.2d at 1193-95 (stating that the number of police complaints bears no relation to their validity and reversing a jury verdict for a plaintiff on a *Monell* claim when the plaintiff produced no evidence that past complaints of police misconduct had merit); *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1373-74 (S.D. Fla. 2013) (stating that a list of complaints against police officers, without more, is insufficient to create an issue of fact regarding a municipality's policy of inadequately investigating or disciplining police officers). In addition, record evidence of nine additional use-of-force investigations during that same time period shows four suspensions for excessive uses of force. *See* DE 143-2.

Plaintiff further contends that the Sheriff's Office's investigations into use-of-force incidents were perfunctory and incomplete. To support this contention, plaintiff points to two 2012 use-of-force investigations where the investigators did not contact the arrestees. *See* DE 143-1 at 922-25, 1278-80; DE 143-3 at 23; DE 143-4 at 5. Both arrestees testified, however, that they did not file complaints of unnecessary force. DE 143-3 at 29; DE 143-4 at 10. Plaintiff points to no evidence to show that the Sheriff's Office's failure to interview the arrestee following each use of force, even where there is no citizen complaint, caused the alleged violation of Anderson's constitutional rights. *See Brooks*, 813 F.2d at 1195 (holding that a plaintiff failed to establish the causal element of a *Monell* claim when he produced no evidence to show that allegedly deficient investigation procedures "were the moving force" behind the violation of his constitutional rights and that more effective procedures would have prevented his injuries (emphasis and quotation marks omitted)).

There is no genuine issue of material fact to prevent granting summary judgment on Plaintiff's *Monell* claims. Sheriff Mascara's motion for summary judgment on the *Monell* claims is granted.

### B. Dr. Familia and Corizon's Summary Judgment Motion

Plaintiff alleges in Counts V and VI of the Fourth Amended Complaint that Dr. Familia and Corizon's administrators, employees, and agents were negligent in treating Anderson after he had a seizure at the jail and in failing to immediately refer him to a hospital. DE 80 at 29-33, 35-39. Dr. Familia and Corizon seek summary judgment on the medical-negligence claims. Dr. Familia and Corizon argue that (1) Plaintiff has no qualified medical expert to testify as to the standard of care, (2) the opinions of Plaintiff's nursing expert, Deborah Shelton, do not support liability of the Corizon nursing staff, and (3) there is no competent record evidence to support Plaintiff's medical-negligence claims. DE 130 at 5-9. Plaintiff responds that medical experts from multiple specialties have testified as to the negligence of Dr. Familia and the nursing staff. DE 149 at 4.

#### i. Standard of Care Experts

Dr. Familia and Corizon argue that Plaintiff has no qualified medical expert to testify as to the standard of care. As discussed below in Section IV.E.iii, Dr. Smock is qualified to testify as to the prevailing professional standard of care that Dr. Familia owed. Moreover, Dr. Familia and Corizon acknowledge in their motion in limine that Dr. Dwight Dawkins is in the same practice area as Dr. Familia and is qualified to testify as to the standard of care. *See* DE 127 at 7.

As to the standard of care that the Corizon nursing staff owed, Plaintiff's expert witness disclosure named Shelton as a retained expert. DE 52-1 at 1. Shelton has a Ph.D. in nursing and

has several years of experience as a professor in the area of correctional health. DE 147-7 at 7-8. Dr. Familia and Corizon do not argue that Shelton is unqualified to testify as to the standard of care that the Corizon nursing staff owed. Accordingly, Dr. Familia and Corizon's motion for summary judgment on the basis that Plaintiff has no qualified medical expert to testify as to the standard of care is denied.

### ii.     Support for Liability of the Corizon Nursing Staff

Dr. Familia and Corizon argue that Shelton's opinions do not support liability of the Corizon nursing staff because her opinion that nurses did not properly monitor Anderson is based on only the lack of documentation about his condition. DE 130 at 6-8. Thus, Dr. Familia and Corizon argue that Shelton's opinion is based on speculation and assumptions about non-record evidence. *Id.* Plaintiff responds by pointing to Shelton's nursing experience and opinions. DE 149 at 3-4.

In her report, Shelton opines that routine and repeated monitoring of Anderson was not performed at the jail and that the nursing staff therefore failed to recognize and respond to the deterioration of his condition. DE 147-7 at 3-5. Shelton bases this opinion on the lack of documentation about Anderson's condition and on standard nursing practices that require charting, flow sheets, and shift reports documenting a patient's condition. *Id.* Shelton testified that, even when there is no change in a patient's condition, nurse shift notes should note the lack of a change. DE 129-5 at 26.

Expert testimony must be grounded in methods and procedures and must be based on something more than subjective belief or unsupported assumptions. *McDowell*, 392 F.3d at 1298. Questions of weight and credibility of expert opinion testimony are for the jury. *Hamer v. City of*

*Atlanta*, 872 F.2d 1521, 1532 (11th Cir. 1989). Factual questions remain as to what the standard nursing practices were and whether they were followed in caring for Anderson. It is not mere speculation for Shelton to opine that a failure to follow standard nursing practices indicates improper care. Shelton's opinion that the nursing staff failed to follow standard nursing practices and therefore failed to recognize and respond to the deterioration of Anderson's condition may support liability of the Corizon nursing staff. The weight to be given to Shelton's opinions is a matter left to the jury. Dr. Familia and Corizon's motion for summary judgment on the basis that Shelton's opinions do not support liability of the Corizon nursing staff is denied.

### iii.    Record Support for the Medical-Negligence Claims

Dr. Familia and Corizon argue that there is no competent record evidence to support Plaintiff's medical-negligence claims. DE 130 at 8-9. Plaintiff responds that medical experts from multiple specialties have testified as to the negligence of Dr. Familia and the nursing staff. DE 149 at 4.

To prevail on a Florida medical-negligence claim, a plaintiff must establish the standard of care that the defendant owed, the defendant's breach of the standard of care, and that the breach proximately caused the damages claimed. *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984). Dr. Smock testified that there was "certainly a probability" that Anderson would have survived had he been appropriately examined for signs of a stroke and referred to the hospital to receive a medication to break up blood clots within three to four hours of his seizure. DE 132-11 at 42-44, 98-99. Dr. Smock opined in his report that Corizon employees misdiagnosed Anderson's stroke and failed to obtain appropriate and timely medical care for him and that these failures "resulted in a missed opportunity to treat him for a thrombosis of the left internal carotid."

DE 148-1 at 9.  Dr. Dawkins opined in his report that Corizon employees denied Anderson proper care by failing to appropriately recognize his stroke symptoms and arrange his timely transportation to the hospital for stroke treatment.  DE 76-1 at 1-2.  Dr. Dawkins opined that "[t]imely treatment would, within a reasonable degree of medical probability, have saved . . . Anderson's life."  *Id.* at 2.  If believed, these opinions could support liability of Dr. Familia and Corizon for medical negligence.  Dr. Familia and Corizon's motion for summary judgment on the medical-negligence claims is denied.

## C.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment on four issues.  The Court addresses each issue in turn.

### i.  Deputy Brennan's defense of qualified immunity for the excessive-force claim

Plaintiff alleges in Count III of the Fourth Amended Complaint that Deputy Brennan used excessive and deadly force against Anderson during the course of the arrest by striking Anderson, utilizing a "neck restraint," and placing his boot on Anderson's neck.  DE 80 at 13. Deputy Brennan has raised an affirmative defense of qualified immunity, and he states that material factual disputes preclude summary judgment on Plaintiff's excessive-force claim.  DE 83 at 6; DE 28 at 3.

Plaintiff seeks summary judgment on this affirmative defense.  Plaintiff argues that it was clearly established at the time of the incident that Deputy Brennan used unlawful force by using a neck restraint, standing on Anderson's neck, and spraying him with pepper spray when Anderson was not resisting.  DE 131 at 7-13.  Deputy Brennan responds that there are genuine disputes as to whether he stood on Anderson's neck and sprayed him with pepper spray and whether Anderson

resisted arrest.  DE 138 at 3.  Deputy Brennan further responds that his use of a neck restraint did not violate clearly established law.  *Id.* at 3-5.

A court may grant partial summary judgment on an affirmative defense if the plaintiff shows that the defendant cannot maintain the defense by a preponderance of the evidence.  *Tingley Sys., Inc. v. Healthlink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007).  "Qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right."  *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018).  To be entitled to qualified immunity, an officer first must establish that he was acting within his discretionary authority during the incident.  *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018).  The officer proves that he acted within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (quotation marks omitted).

If the officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a constitutional right that was clearly established at the time of the incident.  *Montanez*, 889 F.3d at 1207.  Clearly established law "should not be defined at a high level of generality" and "must be particularized to the facts of the case."  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quotation marks omitted).  Although there need not be a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 551 (quotation marks

omitted) (explaining that qualified immunity protects all but the plainly incompetent or those who knowingly violate the law).

The constitutionality of a use of force during an arrest is analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Reasonableness is dependent on all of the circumstances that are relevant to the officer's decision to use force, including "the seriousness of the crime, whether the suspect poses an immediate danger to the officer or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *see also Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (stating that determining reasonableness involves consideration of factors such as the need for the use of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically). The use of deadly force to prevent a suspect's escape is constitutionally unreasonable unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Qualified immunity shields the officer unless every reasonable officer in his position would conclude that the force used was unlawful. *Jean-Baptiste*, 627 F.3d at 821.

As an initial matter, the parties do not dispute that Deputy Brennan was acting within his discretionary authority at the time of Anderson's arrest. DE 128 at 2; DE 143 at 2; *see Manners*, 891 F.3d at 967-68 (stating that there is no dispute that officers act within their discretionary authority when conducting arrests). The parties do dispute whether Deputy Brennan stood on Anderson's neck and sprayed him with pepper spray while Anderson was being handcuffed.

DE 132 at 6; DE 137 at 4.  Deputy Brennan's testimony would support a conclusion that he placed the ball of his foot on Anderson's shoulder to make sure that Anderson stayed on the ground and that he did not pepper spray Anderson while Anderson was being handcuffed.  DE 128-1 at 121-22, 125-26.

It is undisputed that, prior to Anderson being handcuffed, Deputy Brennan used a deadly force technique known as a neck restraint by putting his arms around Anderson's neck in an attempt to limit the oxygen supply to Anderson's brain and cause him to become unconscious. DE 132 at 3-4; DE 137 at 3.  Plaintiff contends that the neck restraint alone was an excessive use of force.

Deputy Brennan testified that Anderson fell while running from the traffic stop and that he caught up to Anderson and attempted to hold him down on the ground.  DE 128-1 at 99, 101. Anderson "flail[ed] his arms" and attempted to push Deputy Brennan and get up.  *Id.* at 102-05. Anderson then wrapped his arms around Deputy Brennan's waist in the area of Deputy Brennan's duty belt, giving him access to Deputy Brennan's gun.  *Id.* at 105-06.  Deputy Brennan maneuvered himself behind Anderson and used the neck restraint.  *Id.* at 106-09.

In light of Deputy Brennan's testimony that Anderson resisted arrest and had access to Deputy Brennan's gun while they struggled on the ground, factual questions remain as to whether Anderson posed a threat of serious physical harm to Deputy Brennan or to others.  *See Garner*, 471 U.S. at 11 (stating that it is not constitutionally unreasonable for an officer to use deadly force when the officer has probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others).  Plaintiff's motion for partial summary judgment on Deputy Brennan's defense of qualified immunity for the excessive-force claim is denied.

ii. **Sheriff Mascara's defense that Anderson's injuries were caused by the wrongful acts of others**

Plaintiff alleges in Counts IV and VII of the Fourth Amended Complaint that Sheriff Mascara had a non-delegable duty to provide reasonable and necessary medical services to pretrial detainees. DE 80 at 24-25, 43. Plaintiff alleges in Count IV that Sheriff Mascara was deliberately indifferent to Anderson's serious medical needs when Sheriff Mascara failed to inform medical personnel that deadly force had been used against Anderson and failed to immediately call 911 or have Anderson examined when he exhibited signs and symptoms of a stroke. *Id.* at 25. Plaintiff alleges in Count VII that Sheriff Mascara contracted with Corizon to provide reasonable and necessary medical services to pretrial detainees and that Sheriff Mascara is liable for the negligent care that Corizon and its administrators, employees, and agents provided to Anderson. *Id.* at 43. Sheriff Mascara has raised an affirmative defense that Anderson's injuries "were caused in whole or in part by reason of the wrongful acts of others over which [Sheriff Mascara] had no control nor responsibility for control." DE 84 at 7.

Plaintiff seeks summary judgment on this affirmative defense. Plaintiff argues that Sheriff Mascara had a non-delegable duty to provide medical care for Anderson, that Sheriff Mascara has pled no facts to support the affirmative defense, and that, as it relates to the negligence claim, he has disclosed no expert whose testimony might support the affirmative defense. DE 131 at 14-19. Sheriff Mascara responds by agreeing that he had a non-delegable duty to provide medical care for Anderson. DE 138 at 10; *see West v. Atkins*, 487 U.S. 42, 56 (1988) (stating that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody"). Sheriff Mascara defers to

17

Dr. Familia and Corizon's analysis of the issues related to Plaintiff's medical claims. DE 138 at 10.

As discussed below in Section IV.C.iv, factual questions remain as to whether hospital physicians were negligent and were causal factors in Anderson's death. Thus, factual questions remain as to whether actors over whom Sheriff Mascara had no control caused Anderson's injuries. Plaintiff's motion for partial summary judgment on Sheriff Mascara's defense that actors over whom he had no control or responsibility for control caused Anderson's injuries is denied.

### iii.    A finding that Anderson's medical needs were serious

Plaintiff asks the Court to enter a partial summary judgment finding that Anderson's need for medical care was serious. *See* Fed. R. Civ. P. 56(g) (stating that a court that does not grant all of the relief requested in a summary judgment motion may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case). Defendants do not respond to this request. However, Plaintiff fails to support the request with undisputed facts to substantiate a conclusion that Anderson's need for medical care was serious. *See* DE 131 at 19-20; *see also Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (stating that a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (quotation marks omitted)). Plaintiff's motion for a partial summary judgment finding that Anderson's need for medical care was serious is denied without prejudice.

iv. **Dr. Familia and Corizon's defense that subsequent treating physicians were negligent and proximate intervening causal factors in Anderson's death**

Plaintiff alleges in Counts V and VI of the Fourth Amended Complaint that Dr. Familia and Corizon's administrators, employees, and agents were negligent in treating Anderson after he had a seizure at the jail and in failing to immediately refer him to the hospital. DE 80 at 29-33, 35-39. Dr. Familia and Corizon have raised an affirmative defense that subsequent treating physicians at the hospital were negligent and proximate intervening causal factors in Anderson's death. DE 88 at 4.

Plaintiff seeks summary judgment on this affirmative defense. Plaintiff argues that Dr. Familia and Corizon have disclosed no expert whose testimony might support the defense. DE 131 at 20-21. Dr. Familia and Corizon respond that testimony of Plaintiff's own expert, Dr. Smock, is critical of the care that hospital physicians rendered. DE 146 at 2.

Dr. Smock testified, "No, sir," when asked whether it was appropriate that a neurologist was not called until 26 hours after Anderson arrived at the hospital. DE 132-11 at 41-42. Dr. Smock further testified that it was correct that Anderson had no chance of survival by the time the neurologist was called. *Id.* at 42. Although Dr. Smock did not specifically testify that Anderson would have had a chance of survival had a neurologist been called more quickly, Dr. Smock did testify that "a stroke when quickly treated and appropriately treated, the survivability and the functionality increases the sooner that individual receives care." *Id.* at 53.

In light of Dr. Smock's testimony, factual questions remain as to whether hospital physicians were negligent and were causal factors in Anderson's death. Plaintiff's motion for

partial summary judgment on Dr. Familia and Corizon's defense that hospital physicians were negligent and proximate intervening causal factors in Anderson's death is denied.

### D.     Sheriff Mascara and Deputy Brennan's Motion to Exclude

Sheriff Mascara and Deputy Brennan move to exclude certain opinions of Plaintiff's retained expert Masten. Specifically, Sheriff Mascara and Deputy Brennan seek the exclusion of Masten's opinions that (1) the stop and detention of Anderson and the techniques that Deputy Brennan used during the stop were improper, (2) Deputy Brennan's use of force was improper and excessive, (3) Deputy Brennan used deadly force, (4) the Sheriff's Office's investigation of the incident was inadequate and perfunctory, and (5) Sheriff's deputies failed to give medical personnel a full and necessary explanation of the force used against Anderson. DE 9 at 2. Sheriff Mascara and Deputy Brennan argue that the opinions are not based on a reliable methodology and invade the province of the jury by reaching conclusions on ultimate issues. *Id.* at 3-6. Plaintiff responds both that Masten's opinions are based on his significant experience working in law enforcement and his review of the material in this case and that he is permitted to testify as to ultimate issues of fact. DE 135 at 3-9.

A district court serves as a gatekeeper to the admissibility of expert testimony, but credibility and persuasiveness are reserved for the jury. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a

preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (quotation marks omitted).

A witness who qualifies as an expert by knowledge, skill, experience, training, or education may provide opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, the proponent of expert testimony "must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1107 (11th Cir. 2005).

Sheriff Mascara and Deputy Brennan do not contend that Masten is unqualified to give his opinions. Determining whether a witness is qualified to testify as an expert requires a court to examine the witness's credentials in light of the subject matter of the proposed testimony. *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (stating that inquiry into a witness's qualifications is "not stringent" and that, "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility" (alteration and quotation marks omitted)). Masten worked in law enforcement for approximately 33 years and previously served as the Chief of Police of the Miami Shores Police Department and the Cocoa Police Department. DE 135-1 at 173-74. His experience includes training and

supervising law enforcement officers.  *Id.* at 5-8, 175.  Masten is qualified to give testimony pertaining to proper practices in law enforcement.

When evaluating the methodology underlying an expert's opinion, a court may consider factors such as whether the expert's theory or technique can be and has been tested, whether the theory or technique has been subjected to peer review and publication, whether there is a known or potential rate of error for a technique, whether there are standards controlling the technique's operation, and whether the theory or technique is generally accepted.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-50 (1999) (citing *Daubert*, 509 U.S. at 592-94).  However, the evaluation of methodology varies from case to case.  *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).  In cases involving non-scientific issues, the relevant reliability concerns may focus on personal knowledge and experience.  *Kumho*, 526 U.S. at 150 (stating that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending in the nature of the issue, the expert's particular expertise, and the subject of his testimony" (quotation marks omitted)).

Here, Masten bases his opinions on his experience working in law enforcement, his knowledge of proper law enforcement practices and procedures, and his review of records and interviews associated with this case.  This is a sufficient showing of reliability to permit Masten's opinions to be presented to the jury.

 Finally, expert testimony is helpful to the jury if it concerns matters that are beyond the understanding of the average lay person.  *Frazier*, 387 F.3d at 1262.  The Court concludes that the lawfulness of stops and uses of force and the adequacy of explanations of and investigations into uses of force are beyond the understanding of the average lay person.

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Although a qualified expert may offer his opinion on an ultimate issue in a case, he may not tell the jury what result to reach. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Masten's opinions do not tell the jury what result to reach and are not inadmissible simply because they may embrace ultimate issues to be resolved by the jury.

Accordingly, the Court concludes that the five opinions that Sheriff Mascara and Deputy Brennan challenge are admissible, subject to appropriate objections and cross-examination at trial by the Defendants. Sheriff Mascara and Deputy Brennan's motion to exclude Masten's opinions is denied.

### E.     Corizon and Dr. Familia's Motion in Limine

Corizon and Dr. Familia move to exclude the testimony of Dr. Jose Pozo, Dr. Oszkar Szentirmai, Dr. Stephen Nelson, Dr. Dawkins, and Dr. Smock.

### i.     Drs. Pozo, Szentirmai, and Nelson

Corizon and Dr. Familia move to exclude the testimony of Drs. Pozo, Szentirmai, and Nelson on opinions formed outside of the course of treating Anderson because those doctors did not provide written reports as required under Fed. R. Civ. P. 26(a)(2)(B). DE 127 at 3-7. Corizon and Dr. Familia contend that the doctors are expected to provide opinions that are based on reviews of a jail video and jail medical records. *Id.* at 6-7. Corizon and Dr. Familia further contend that the doctors are unqualified to testify as to the standard of care that Dr. Familia owed because the doctors are not of the same specialty as Dr. Familia. *Id.* at 7-9. Plaintiff responds that the doctors were disclosed as required under Fed. R. Civ. P. 26(a)(2)(C) and that the lack of written reports is harmless. DE 148 at 12-18.

Unless otherwise stipulated or ordered by the court, an expert witness disclosure must be accompanied by a written report if the witness is one retained or specially employed to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(B). "[T]reating physicians are not expert witnesses when testifying about observations based on personal knowledge, including the treatment of a party." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013) (quotation marks omitted). "However, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required." *Id.* (quotation marks omitted). An expert witness disclosure for a witness who is not required to provide a written report must state the subject matter on which the witnesses is expected to testify and a summary of the facts and opinions to which the witnesses is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). If a party fails to provide information or identity a witness as required under Rule 26(a), the party may not use the information or witness to supply evidence on a motion or at a hearing or trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Corizon and Dr. Familia do not reply to Plaintiff's argument that the lack of reports from Drs. Pozo, Szentirmai, and Nelson was harmless. The Court notes that Plaintiff timely disclosed the subject matter of each doctor's testimony and that each doctor thereafter was deposed. *See* DE 52; DE 115-8; DE 115-9; DE 158-3. Corizon and Dr. Familia's motion to exclude the testimony of Drs. Pozo, Szentirmai, and Nelson on opinions formed outside of the course of treatment is denied because there is no indication that Corizon and Dr. Familia have suffered prejudice.

Turning to the argument that Drs. Pozo, Szentirmai, and Nelson are unqualified to testify as to the standard of care that Dr. Familia owed, Plaintiff did not disclose the doctors as

standard-of-care experts. According to Plaintiff, Drs. Pozo and Szentirmai will provide evidence about their "clinical observations of . . . Anderson and the history that was provided," the survivability given Anderson's condition, the cause of Anderson's death, and the available treatment alternatives. DE 52-1 at 1-2. Also according to Plaintiff, Dr. Nelson will provide evidence about his findings and conclusions from Anderson's autopsy. *Id.* at 2-3. Plaintiff does not assert in her response to the motion in limine that Drs. Pozo, Szentirmai, and Nelson will testify as to the standard of care that Dr. Familia owed. Rather, Plaintiff assets that each doctor will testify within his respective specialty. *See* DE 148 at 12-18. Corizon and Dr. Familia's motion to exclude the testimony of Drs. Pozo, Szentirmai, and Nelson because they are not of the same specialty as Dr. Familia is denied. To the extent that Drs. Pozo, Szentirmai, and Nelson do provide standard-of-care testimony, each doctor may testify only as to the standard of care in his respective specialty. *See generally* Fla. Stat. § 766.102(5) (providing rules concerning the competency of medical experts to testify about standard of care in Florida medical-negligence cases).

### ii. Dr. Dawkins

Corizon and Dr. Familia move to exclude the testimony of Dr. Dawkins. Corizon and Dr. Familia argue that Dr. Dawkins's Rule 26(a)(2)(B) report was untimely and that he did not author the report. DE 127 at 9-10. Plaintiff responds that Dr. Dawkins's Rule 26(a)(2)(B) report was disclosed in accordance with this Court's deadline and that he did author the report. DE 148 at 10-11.

This Court previously permitted Plaintiff to amend her expert disclosure to add Dr. Dawkins and required Plaintiff to provide Defendants with a copy of Dr. Dawkins's written

expert report by July 16, 2018.  DE 75.  Plaintiff complied with that requirement and, thus, disclosed Dr. Dawkins's report in a timely manner.  DE 76.

A Rule 26(a)(2)(B) report must be "prepared and signed by the witness."  Fed. R. Civ. P. 26(a)(2)(B).  Dr. Dawkins testified that he discussed his opinions with counsel, counsel "put [the report] together," and Dawkins made changes to the report before signing it.  DE 148-11 at 16-20. Based on this testimony, the Court concludes that Dr. Dawkins prepared his report.  Corizon and Dr. Familia's motion to exclude the testimony of Dr. Dawkins is denied.

### iii.    Dr. Smock

Corizon and Dr. Familia move to exclude testimony of Dr. Smock as to the standard of care that Dr. Familia owed.  Corizon and Dr. Familia argue that Dr. Smock is an emergency room physician who is unqualified under Fla. Stat. § 766.102(5)(b) to testify as to the standard of care that a general practitioner owes.  DE 127 at 7-10.  Plaintiff responds that Dr. Familia was not a Florida-licensed general practitioner when she cared for Anderson and that Dr. Smock is qualified under Fla. Stat. § 766.102(5)(b) or (c) to testify as to the standard of care that Dr. Familia owed. DE 148 at 3-6.

State law governs a witness's competency regarding a claim or defense for which state law supplies the rule of decision in a civil case.  Fed. R. Evid. 601; *see also McDowell*, 392 F.3d at 1295-96 (holding that state rules about the competency of experts to testify as to the standard of care applied to a state law medical-negligence claim brought in federal court under supplemental jurisdiction).  "The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances,

is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1).

"A person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records . . . ." *Id.* § 766.102(5). In addition,

> If the health care provider against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness must have devoted professional time during the 5 years immediately preceding the date of the occurrence that is the basis for the action to:
>
> 1. The active clinical practice or consultation as a general practitioner;
>
> 2. The instruction of students in an accredited health professional school or accredited residency program in the general practice of medicine; or
>
> 3. A clinical research program that is affiliated with an accredited medical school or teaching hospital and that is in the general practice of medicine.

*Id.* § 766.102(5)(b).

According to Dr. Smock's verified affidavit, he has served as a police surgeon since 1993 and, in that capacity, "provide[s] primary and general care to members of several municipal police forces." DE 148-3 at 1. Dr. Smock also avers that he is "actively involved in the education of nurses, medical students, residents and fellows" as a clinical professor with the Department of Emergency Medicine, University of Louisville School of Medicine. *Id.* Dr. Smock avers that, in that capacity, he has "had nurses, medical students and residents do rotations with [him] as [a] police surgeon, instructing students and residents on the provision of general, non-emergent medical care since 2011." *Id.*

Even if it is accepted that Dr. Familia is a general practitioner, Dr. Smock is qualified to testify as to the prevailing professional standard of care that Dr. Familia owed. *See* Fla. Stat.

§ 766.102(5)(b)(1), (2). Accordingly, Corizon and Dr. Familia motion in limine to exclude testimony of Dr. Smock as to the standard of care that Dr. Familia owed is denied.

### F.  Plaintiff's Motion in Limine

Plaintiff move to exclude evidence of Anderson's prior criminal history and of opinion testimony from Drs. Arden and Feldman.

### i.  Anderson's Criminal History

Plaintiff moves to exclude any evidence of Anderson's prior criminal history or bad acts, arguing that any criminal background is irrelevant and prejudicial when Deputy Brennan had no knowledge of a criminal background at the time of the stop and arrest. DE 133 at 1-6. Specifically, Plaintiff seeks to exclude evidence that Anderson had 1990 convictions of burglary, grand theft, and robbery and a 2001 conviction of possession of a firearm or ammunition by a convicted felon. *Id.* at 2. Plaintiff does not seek to exclude evidence that Anderson's driver's license was suspended at the time of the stop. *Id.* at 6. Dr. Familia and Corizon respond that they have no intention to introduce evidence of Anderson's prior criminal history or bad acts. DE 139 at 1-2. Sheriff Mascara and Deputy Brennan respond that Anderson's criminal history is relevant to explain his "actions in fleeing the traffic stop despite being ordered to remain."

Evidence is relevant if it has any tendency to make a fact of consequence in the action more or less probable than the fact would be without the evidence. Fed. R. Evid. 401. Relevant evidence generally is admissible, but may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 402, 403. Evidence of a crime, wrong, or other act is inadmissible to prove a person's character to show that the person

acted in accordance with that character on a particular occasion. Fed. R. Evid. 404(b)(1). However, such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2); *see also Knight ex rel. Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 816-17 (11th Cir. 2017) (holding that evidence of a witness's criminal conviction for which he was on probation was admissible to show his motive to flee from law enforcement).

Here, it is undisputed that Anderson stated after he was arrested that he ran from the stop because his driver's license was suspended. *See* DE 132 at 6; DE 137 at 5; DE 132-5 at 98; DE 157-1 at 137. Sheriff Mascara and Deputy Brennan point to nothing in the record indicating that Anderson ran from the stop for any reason associated with his criminal background. Thus, the Court concludes that evidence of Anderson's prior criminal background is inadmissible. To the extent that such evidence may have minimal relevance to this case, the Court concludes that the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. Plaintiff motion to exclude evidence of Anderson's prior criminal history or bad acts is granted. However, by agreement of all parties, evidence of Anderson's driver's license suspension at the time of the stop is admissible.

### ii. Dr. Arden

Plaintiff moves to exclude any testimony by Dr. Arden "that the thrombus which was found in . . . Anderson's left internal carotid artery, did not form as a result of physical pressure to [his] neck by law enforcement but rather was caused by arteriosclerotic and hypertensive disease." DE 133 at 6. Plaintiff argues that Dr. Arden has admitted that he does not know the cause of the thrombus and that he therefore should not be permitted to speculate about its cause. *Id.* at 8-12.

Dr. Familia and Corizon respond that Dr. Arden is a forensic pathologist whose job is to determine causes of death.  DE 139 at 4-5.

Dr. Arden testified that he is a forensic pathologist and that it is his opinion after a review of the case that Anderson died from "an ischemic left cerebral infarct due to thrombosis of the left internal carotid artery due to . . . arteriosclerotic and hypertensive cardiovascular disease." DE 133-2 at 4, 33-35.  Dr. Arden testified that he could not say "why that thrombus developed in precisely that spot," but that it was "basic medicine" that "this is a very common consequence of arteriosclerotic and hypertensive cardiovascular disease."  *Id.* at 52-53, 56, 59-61.  Dr. Arden further testified that Anderson had "the most common underlying conditions that are associated with and cause thrombotic ischemic strokes" in that he had arteriosclerotic and hypertensive cardiovascular disease and had "a history of prior end organ damage from arteriosclerotic disease."  *Id.* at 59-60.  Dr. Arden acknowledged that trauma could cause a thrombus, but he testified that trauma could not have caused Anderson's thrombus, which was in a portion of an artery that was inside bone and was not accessible to external compression.  *Id.* at 56-57, 63-64

Expert testimony must be grounded in methods and procedures and must be based on something more than subjective belief or unsupported assumptions.  *McDowell*, 392 F.3d at 1298. Dr. Arden's opinion as to the cause of Anderson's death is not based on mere speculation, but rather is based on his medical knowledge and his review of Anderson's condition.  The weight to be given to Dr. Anderson's opinion is a matter left to the jury.  *See Hamer*, 872 F.2d at 1532 (stating that questions of weight and credibility of expert opinion testimony are for the jury). Plaintiff's motion to exclude Dr. Arden's testimony about the cause of the thrombus is denied.

### iii. Dr. Feldman

Plaintiff moves to exclude Dr. Feldman's testimony "that the physical cause of . . . Anderson's arterial dissection cannot be identified" and his "opinions as to alternative traumatic event[s], cumulative traumatic events or any other physical event as possible or probable cause of . . . Anderson's dissection." DE 133 at 12. Plaintiff argues that Dr. Feldman's lack of knowledge as to the cause of the arterial dissection disqualifies him from offering any opinion about the cause. *Id.* at 13-16. Dr. Familia and Corizon respond that Dr. Feldman is permitted to testify that no competent neurologist can place the cause of Anderson's stroke on any physical event. DE 139 at 9-10.

Dr. Feldman testified that he is a neurologist and that it is his opinion after a review of the case that an ischemic stroke from an arterial dissection caused Anderson's death. DE 133-3 at 4-5, 11, 14. Dr. Feldman testified that he could not know when the dissection occurred, that there was no way to identify a particular event that caused the dissection with a reasonable degree of medical certainty, and that "the dissection could have been there for days or even weeks before the stroke." *Id.* at 14-15, 22-23, 29. Dr. Feldman further testified that approximately 40 percent of dissections occur spontaneously and that the remaining dissections are related to trauma, including minor trauma from turning one's head or playing a sport. *Id.* at 18-20, 22, 47.

Dr. Feldman's opinion that the cause of the dissection cannot be known is based on his medical knowledge and his review of Anderson's condition. The weight to be given to Dr. Feldman's opinion is a matter left to the jury. *See Hamer*, 872 F.2d at 1532. Plaintiff's motion to exclude Dr. Feldman's testimony about the cause of the dissection is denied.

## V.     CONCLUSION

For the foregoing reasons, Sheriff Mascara and Deputy Brennan's motion for summary judgment [DE 125] is **GRANTED IN PART AND DENIED IN PART.**  Specifically, Deputy Brennan's motion for summary judgment on the false-arrest claim in Count III of the Fourth Amended Complaint is denied.  Sheriff Mascara's motion for summary judgment on the *Monell* claims in Count IV of the Fourth Amended Complaint is granted.  Corizon and Dr. Familia's motion for summary judgment [DE 130] is **DENIED.**  Plaintiff's motion for partial summary judgment [DE 131] is **DENIED.**

Sheriff Mascara and Deputy Brennan's motion to exclude opinions of Richard Masten [DE 94] is **DENIED.**  Corizon and Dr. Familia's motion in limine [DE 127] is denied.  Plaintiff's motion in limine [DE 133] is **GRANTED IN PART AND DENIED IN PART.**  Specifically, Plaintiff's motion to exclude evidence of Anderson's prior criminal history or bad acts is granted.  Plaintiff's motion to exclude testimony of Drs. Arden and Feldman is denied.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 11th day of October, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record